UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CRESCENT CITY REMODELING, LLC   *   CIVIL ACTION NO. 22-859
            *
VERSUS          *   SECTION: "A"(2)
            *
CMR CONSTRUCTION & ROOFING,   *   JUDGE JAY C. ZAINEY
LLC            *
            *   MAGISTRATE JUDGE DONNA PHILLIPS
            *   CURRAULT
            *

## ORDER AND REASONS

The following motion is before the Court: **Motion for Summary Judgment (Rec. Doc. 113)** filed by Third-Party Defendant, Next Insurance US Company ("Next"). Third-Party Plaintiff, CMR Construction & Roofing, LLC ("CMR"), opposes the motion. The motion, submitted for consideration on July 10, 2024, is before the Court on the briefs without oral argument. For the reasons that follow, Next's **Motion for Summary Judgment** is **GRANTED**.

### I. Background

This case arises out of a fee dispute between CMR and Crescent City Remodeling, LLC ("Crescent"). CMR contracted Crescent to perform remediation work at Tangipahoa Parish School Board buildings following Hurricane Ida. (Rec. Doc. 113-1, at 1). Crescent ultimately filed suit in the 24th Judicial District Court for the Parish of Jefferson against CMR, alleging that CMR breached the parties' Joint Work Agreement by failing to compensate Crescent for its work. (Rec. Doc. 1-2, at 4). CMR subsequently removed the suit to this Court (Rec. Doc. 1), answered, and asserted a counterclaim against Crescent, alleging that Crescent failed to perform its obligations under the contract, including (1) failing to supervise its workers, (2) failing to hire adequately trained individuals, (3) failing to maintain records regarding its work, (4) allowing the removal or theft of property from School Board work sites, (5) failing to pay individuals it

1

hired, (6) failing to disinfect and/or seal School Board buildings, and (7) failing to coordinate the ordering and disposition of supplies and support services. (Rec. Doc. 2, ¶¶ 34-42). CMR alleges damages in the form of payments withheld by the School Board, lost revenue and profits from work not obtained on other School Board buildings, and additional costs for the following: "obtaining and deploying" additional personnel, responding to police reports, managing timesheets and paying Crescent's employees, reapplying disinfectant and conducting work after failed clearance tests, and hiring additional subcontractors to perform work that Crescent failed to perform. (*Id.* ¶ 39).

CMR subsequently amended its counterclaim and impleaded Next, asserting that its claims against Crescent fall within the coverage provisions of Policy No. NXTCBM2MQ7-00-GL, a commercial liability policy issued to Crescent. (Rec. Doc. 86, ¶ 46). CMR filed the suit against Next as a right of direct action under Louisiana law. (*Id.* ¶ 53). Next now moves for summary judgment, arguing that the policy at issue does not cover the economic and breach of contract losses alleged by CMR. In the alternative, Next argues that, even if CMR's damages qualify as property damage under the policy, the policy's Fungi Exclusion and Designated Ongoing Operations Exclusion would bar coverage. CMR opposes the motion, arguing that the policy covers the requested damages. The Court considers these arguments below.

## II.     Legal Standard

Summary judgment is proper where there is "no genuine dispute of material fact" and "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). That is, it is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759

(5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

III.    Discussion

Next primarily relies on the argument that the policy does not cover the damages alleged in CMR's counterclaim, providing the insurance policy and the deposition transcript of Tiffany Snow, a former CMR Account Executive who was on-site for this particular project, as evidence. In opposition, CMR argues that property damage is at issue, and provides Tiffany Snow's declaration as evidence. The policy states that "the words 'you' and 'your' refer to the Named

Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." (Rec. Doc. 113-3, at 15). Crescent City Remodeling, LLC, is the named insured. (*Id.* at 3). The policy's coverage under Section A reads as follows: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (*Id.* at 15). The policy defines property damage in two ways: (1) "[p]hysical injury to tangible property, including all resulting loss of use to that property," and (2) "[l]oss of use of tangible property that is not physically injured." (*Id.* at 29).

CMR's counterclaim relates primarily to Crescent's allegedly poor work product, following which CMR spent additional funds to redo Crescent's work. (Rec. Doc. 2, ¶¶ 36-39; Rec. Doc. 115-2, Declaration of Tiffany Snow, ¶¶ 7-13, 20-30, 61-67; Rec. Doc. 113-2, Deposition of Tiffany Snow, at 38:20-40:1, 41:13-48:25).[1] This Court has been provided no evidence demonstrating any "[p]hysical injury to tangible property." (Rec. Doc. 113-3, at 29). Next has provided evidence suggesting that no property damage has occurred. Tiffany Snow, CMR's Account Executive for the School Board project, testified that CMR's damages were lost profits, heightened costs and lost revenue from Crescent's failure to meet the terms of the contract, and attorneys' fees. (Deposition of Tiffany Snow, at 115:3-116:23). Indeed, CMR was not charged for the only potential property damage—stolen school property—because the School Board could not measure how much property was lost to theft in the chaos following Ida.[2] (*Id.* at 110:11-111:6). Finally, CMR contends that it had to reapply disinfectant because Crescent's initial application failed to pass environmental clearance; however, there is no evidence that Crescent's work *damaged* the property. (*Id.* at 112:19-113:13).

---

[1] All citations to Snow's deposition transcript refer to the pages of the deposition transcript, not to the CM/ECF header.
[2] Additionally, no evidence has been provided showing that the police reports cost CMR.

Having reviewed the evidence, this Court is satisfied that Next has demonstrated a lack of facts supporting the proposition that property was physically damaged. Accordingly, the burden shifts to CMR to submit evidence creating an issue of fact. CMR has failed to do so. Instead, its opposition reads as follows: "CMR alleges that there has been property damage. At the very least there is an issue of fact here." (Rec. Doc. 115, at 5). It further claims that "some of the damages due are a result of remediation work due to [Crescent's] work on the property, which CMR contends is property damage." (*Id.*). However, CMR provides no evidence to support its position. First, any reference to its counterclaim or complaint pleadings by arguing that it has "allege[d]" property damages fails, as those pleadings are not evidence. *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1986) ("If the burden shifted, [the non-movant] could not demonstrate a fact issue by 'resting on the mere allegations of [his] pleadings.'") (second alteration in original) (quoting *Russell v. Harrison*, 736 F.2d 283, 287 (5th Cir. 1984)). Second, its only citation specifically asserting property damage was that Crescent's "mistimed and poorly executed remediation work required rework, and additional work was necessary to correct [Crescent's] poor work." (*Id.* at 3 (citing Declaration of Tiffany Snow, ¶¶ 4, 18, 23)). However, this does not show that damage to the property ever occurred;[3] instead, it demonstrates that Crescent's allegedly poor workmanship required CMR to do the work itself, which resulted in significant expenses in new material and labor. (*See* Deposition of Tiffany Snow, at 112:18-113:13).

Because no physical damage to the property has been proven, the final question is whether purely economic loss can qualify as loss of tangible property under the insurance

---

[3] The paragraphs of the declaration cited by the opposition state that the project involved significant remediation and repair work following Ida (¶ 4); that CMR coordinated and managed work with other vendors (¶ 18); and that Crescent's blunders required additional expenses and logistics for CMR, such as needing to pay for redelivery after some dumpsters, toilets, and wash stations were delivered to a single location when they were needed at several locations (¶ 23).

contract. Precedent from the Fifth Circuit and Louisiana courts suggest that pure future economic loss does not qualify as tangible property loss. *See, e.g.*, *Lamar Ad. Co. v. Continental Cas. Co.*, 396 F.3d 654, 662 (5th Cir. 2005) ("[T]his court has previously rejected the notion that, under Louisiana law, the loss of possible future income or profits, or the loss of use of that income, constitutes a loss of tangible property." (emphasis omitted)); *cf. Jim Carey Distributing Co., Inc. v. Zinna*, 589 So. 2d 526, 527-28 (La. App. 1 Cir. 1991) (finding that embezzlement does not qualify as tangible property loss, because such loss "contemplates compensation for that period of time required by the exercise of proper diligence to secure repairs to tangible property which has been damaged" (citing *Carroll v. State Farm Ins. Co.*, 427 So. 2d 24 (La. App. 3 Cir. 1983)).[4]

Where policy language is identical to that at issue here, one Louisiana court upheld pure economic damages to be covered only where it was paired with a possibility of physical property damage. In *Stewart Interior Contractors, L.L.C. v. Metalpro Industries, L.L.C.*, Louisiana's Fourth Circuit stated that if "losses actionable for breach of contract or redhibition can never constitute 'property damage' for purposes of the initial grant of coverage in a CGL policy, then the 'impaired property' or other similar exclusions would be entirely superfluous and unnecessary." 969 So. 2d 653, 660 (La. App. 4 Cir. 10/10/07). However, in ultimately finding for the insured, the court specifically found that coverage was triggered by possible property damage: "[W]e disagree with Nautilus and find that, in addition to economic losses, Stewart has *sufficiently alleged that there may have been damage to property other than to the steel studs*

---

[4] While the provision's language in *Jim Carey Distributing* was not identical to that in this case, it referred to property damage as "[p]hysical damage or destruction of tangible property, including loss of use." *Id.* at 527. In this Court's view, the loss of use language, paired with the rest of the provision, is sufficiently similar for comparison of the two provisions.

*themselves*, or incident to their removal and repair, *thereby triggering coverage* under the insuring agreement . . . ." *Id.* at 662 (emphasis added).

This Court finds, consistent with the above precedent, that the damages complained of do not qualify as property damage under the policy's definition. An insurance policy is to be given an interpretation that does not "enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or which would lead to an absurd conclusion." *Jim Carey Distributing Co.*, 589 So. 2d at 528 (citing *Coates v. Northlake Oil Co., Inc.*, 499 So. 2d 252 (La. App. 1 Cir. 1986)). Indeed, insurance contracts are to be interpreted by the terms' ordinary meanings, not in a strained or unusual manner. *Id.* (citing *Schmieder v. State Farm Fire & Cas. Co.*, 339 So. 2d 390 (La. App. 1 Cir. 1976)). Here, no evidence of property damage has been provided; an interpretation of a property damage provision to incorporate redone remediation work because the initial work was not satisfactory does not fall within the provisions absent some property damage by the initial work.[5] As has been detailed above, CMR has failed to demonstrate that any such damage has occurred, and this Court is not convinced that the term "tangible property" as it is used in the policy is intended to include lost profits or expenses incident to poor workmanship, absent some other property damage.[6]

---

[5] Further, other additional coverages are subject to exclusions; for instance, the Contractors Errors and Omissions Coverage includes losses caused by a wrongful act which is a result of impaired property due to deficiency or inadequacy of work product. (Rec. Doc. 113-3, at 66-67). However, the "Construction Materials and Tools" exclusion states that the coverage does not extend to "[a]ny cost or expense for additional products or materials that would not have been incurred had the correct recommendations or specifications been made" or anything "identified as not conforming to industry safety standards." (*Id.* at 68). The same coverage is subject to a delay exclusion, which excludes coverage of damages from delay or failure related to completion of a contract or project. (*Id.*). It also excludes from coverage: fraudulent or intentional acts by the insured, any liability arising from property damage to products in the insured's possession, and any liability arising from property damage to property other than Crescent's product or work. (*Id.* at 68-70). Finally, it excludes "[a]ny liability, cost or expense arising out of 'your work' or 'your product' *that does not constitute* 'property damage.'" (*Id.* at 70 (emphasis added)).

[6] Tangible property is "[p]roperty that has physical form and characteristics." *Tangible property, Black's Law Dictionary* (12th ed. 2024). In Louisiana, the term "is synonymous with the civilian concept of 'corporeal movable' property." *Intelligent Mortg. & Consulting Servs. LLC v. Arbor Lending Grp., L.L.C.*, 371 So. 3d 554, 563 (La. App. 1 Cir. 8/1/23) (citing *City of New Orleans v. Baumer Foods, Inc.*, 532 So. 2d 1381, 1383 (La. 1988). "Corporeals are things that have a body, whether animate or inanimate, and can be felt or touched." La. Civ. Code art. 461. "Corporeal

CMR's argument that pure economic loss cases demand a specific risk-loss analysis and finding fails. Specifically, CMR cites *Cedarholley Investment, LLC v. Pitre* for the argument that there must be a traditional risk-loss analysis and, if a party fails to conduct such an analysis in a motion for summary judgment, the motion should be denied. (Rec. Doc. 115, at 4-5). However, as Next has correctly pointed out, *Cedarholley* dealt with a risk-loss mitigation in the tort context. *See Cedarholley Inv., LLC v. Pitre*, 209 So. 3d 850, 852-53 (La. App. 1 Cir. 12/22/16). No tort claims are asserted against Next, and such an analysis is therefore unnecessary.

Finally, even if the damages were otherwise covered by the Crescent's policy with Next, the Fungi or Bacteria Exclusion prevents recovery. This exclusion states that the insurance does not apply to "[a]ny loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, 'fungi' or 'bacteria,' by any insured or by any other person or entity." (Rec. Doc. 113-3, at 45). "Fungi" is defined to include mold. (*Id.*). Under the Joint Work Agreement, Crescent's participation was limited to coordination and management of the "pack out, demo, and spray[ing of] disinfectant" and the coordination and management of subcontractors "for other services such as dry out, environmental reporting, and certification." (Rec. Doc. 115-2, at 12). The remediation work covered by the agreement falls within this exclusion, and therefore there is no coverage under the policy for costs or expenses from this set of circumstances.[7]

Accordingly;

---

moveables are things, whether animate or inanimate, that normally move or can be moved from one place to another." La. Civ. Code art. 471. This Court is satisfied that none of the damages in this case fall into these definitions.

[7] CMR's opposition is not persuasive. It argues that Next has not provided support for the conclusion and therefore has not met its burden. To the contrary, Next provided the Joint Work Agreement, in which Crescent's obligations—remediation for mold caused by Ida—were detailed. No evidence was provided in opposition demonstrating that Crescent did other work outside of the exclusion or demonstrating that the exclusion otherwise should not apply.

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 113)**, filed by

Third-Party Defendant, Next Insurance US Company, is **GRANTED**.

August 26, 2024

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE